UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| MICHAEL HANDLESON, | |
|---|---|
| Plaintiff, | Case No. 1:17-cv-216-BLW |
| v. | **MEMORANDUM DECISION AND ORDER** |
| CORIZON REGIONAL MEDICAL DIRECTOR "DOE"; CORIZON MEDICAL DIRECTOR "DOE"; CORIZON NURSING DIRECTOR "DOE"; Dr. M. Young; P.A. Paulson, R.N. McCall; and Mr. Gelok, | |
| Defendants. | |

## INTRODUCTION

Plaintiff Michael Handleson, a prisoner in the custody of the Idaho Department of Correction (IDOC) and currently incarcerated at Idaho State Correctional Institution (ISCI), is proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. Mr. Handleson also asserts unidentified state law claims.

Now pending before the Court is Defendants Young, Paulson, McCall and Gelok's Motion for Summary Judgment. Having fully reviewed Mr. Handleson's Response and the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record such that oral argument is unnecessary. *See* D. Idaho Loc. Civ. R.

7.1. Accordingly, the Court enters the following Order granting Defendants' Motion and dismissing this case without prejudice for failure to exhaust administrative remedies.

## INTRODUCTION

Mr. Handleson filed the Complaint in this action on May 19, 2017 against various employees or former employees of Corizon, Inc., the private entity providing medical treatment to Idaho inmates under contract with the IDOC. He alleged (1) civil rights claims for violation of his Eighth Amendment rights under 42 U.S.C. § 1983, (2) claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., and (3) generic claims under Idaho state law, characterized in the Court's Initial Review Order as "related state-law negligence or medical malpractice claims." Dkt. 1, at 1, Dkt. 3-1 at 9. The Court reviewed the complaint pursuant to 28 U.S.C. §§ 1915, 1915A, allowing Plaintiff to proceed on his § 1983 and state law claims against Defendants Dr. Murray Young, P.A. William Paulson, R.N. Tammy McCall, and N.P. Christian Gelok. Dkt. 7 at 18.

The four remaining defendants filed their Answer on February 26, 2018. Dkt. 14. The Court then issued a scheduling Order on June 29, 2018, outlining deadlines for amendment of the complaint, discovery, subpoena requests, depositions, and dispositive motions. Dkt. 20. Shortly thereafter, the Parties proceeded to file several motions, which are now pending before this Court. On July 24, 2018, Defendants filed a Motion for Summary Judgment on the basis that Mr. Handleson had failed to exhaust administrative

remedies and that certain of his claims were time-barred. Dkt. 24. Mr. Handleson filed an untimely Response to the Motion for Summary Judgment on September 12, 2018 along with a Motion to Reconsider Corizon Medical Service LLC as a Defendant. Dkts. 27, 28. Defendants then filed a Motion to Strike Plaintiff's Response as untimely. Dkt. 31. Finally, on October 22, 2018, Plaintiff filed his second Motion for Appointment of Counsel in this case. Dkt. 32. The Court previously denied Plaintiff's Request for Appointment of Counsel on December 22, 2017. *See* Dkt. 7.

For the reasons that follow the Court will grant Defendants' Motion for Summary Judgment, and deny the remaining motions as moot.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### 1. Standard of Law Governing Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment ...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, there must be no genuine dispute as to any material fact in order for a case to survive summary judgment. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact is beyond dispute. To do so, a party may cite to material in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A-B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *S. California Gas Co. v. City of Santa Ana,* 336 F.3d 885, 889 (9th Cir. 2003).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is

insufficient. Rather, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

**2. Standards of Law Governing Exhaustion of Administrative Remedies**

Pursuant to the Prison Litigation Reform Act (PLRA), prisoners are required to

exhaust all available administrative remedies within the prison system before they can include the claims in a new or ongoing civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a); *see also Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). However, an inmate need only exhaust those remedies that are "available"—that is, an inmate must exhaust "those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016).

Failure to exhaust is an affirmative defense that may be asserted in a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, so long as the prisoner's failure to exhaust is clear from the face of the complaint and any public records subject to judicial notice. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc). If, however, either party relies on evidence beyond the pleadings and public records, the exhaustion issue should be brought as a motion for summary judgment under Rule 56. *Id*.

As the PLRA intended, all motions addressing exhaustion of administrative remedies, including "disputed factual questions relevant to exhaustion[,] should be

decided at the very beginning of the litigation." *Id*. at 1171. Rule 56 prohibits the courts from resolving genuine disputes as to material facts on summary judgment. However, if a genuine dispute exists as to material facts relating to an exhaustion defense such that summary judgment is inappropriate, the Court is authorized—but not required—to decide the disputed facts in an appropriate preliminary proceeding, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id*. at 1170-71. In all cases, "[e]xhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id.* at 1170.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

There are three general situations that can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1854.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id*. (internal quotation marks and alteration omitted).

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id*. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73.

 If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), overruled in part on other grounds by *Albino*, 747 F. 3d 1162. Pro se prisoners are exempted "from strict compliance with the summary judgment rules," but not "from all compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018). In opposing a motion for summary judgment, a pro se prisoner still must submit at least "some competent evidence," such as a "declaration, affidavit, [or] authenticated

document," to support his allegations or to dispute the moving party's allegations. *Id*. at 873.

Idaho law likewise requires prisoners to exhaust administrative remedies before proceeding with civil lawsuits:

> Unless a petitioner who is a prisoner establishes to the satisfaction of the court that he is in imminent danger of serious physical injury, no petition for writ of habeas corpus or any other civil action shall be brought by any person confined in a state or county institution, or in a state, local or private correctional facility, with respect to conditions of confinement until all available administrative remedies have been exhausted.

Idaho Code § 19–4206(1). The Idaho Court of Appeals has interpreted this statutory provision as requiring exhaustion for all civil actions that are related to conditions of confinement, including tort claims. *Drennon v. Idaho State Corr. Inst.*, 145 Idaho 598, 181 P.3d 524, 526, 530 (Idaho Ct.App.2007). Moreover, like the PLRA, the Idaho requirement mandates that the prisoner meet procedural deadlines to exhaust his administrative remedies properly. *Butters v. Valdez*, 149 Idaho 764, 241 P.3d 7, 12 (Idaho Ct.App.2010) (relying on federal law interpreting 42 U.S.C. § 1997e(a)). Therefore, the Court will analyze both Mr. Handleson's civil rights claims under § 1983 and state law claims for failure to exhaust administrative remedies.

### 3. Undisputed Facts Related to Exhaustion

#### i. *The IDOC Grievance Process*

The Parties agree that the IDOC, and by extension ISCI, has a grievance process in place for the type of claims at issue here. The IDOC Grievance Process is set out in

IDOC Policy 316 ("Offender Grievance Process") and IDOC Division of Prisons

Standard Operating Procedure ("SOP") 316.02.01.001 ("Grievance and Informal

Resolution Procedure for Offenders"). Dkt. 23-1 at 4. Mr. Handleson does not dispute

Defendants' characterization of the grievance process or present any evidence to dispute

its efficacy. *See* Dkt. 28.

The Offender Grievance Process consists of three stages. Dkt 23-1 at 4-5. First,

any inmate with an issue is required to seek an informal resolution by filling out an

Offender Concern Form, addressed to the most appropriate staff member. *Id*. If the issue

cannot be resolved informally through a Concern Form, the inmate may then file a

Grievance Form. *Id*. A Grievance Form must be submitted within 30 days of the incident

giving rise to the grievance. *Id*. When submitting a Grievance Form, the inmate must

attach a signed or answered Offender Concern Form showing the inmate's attempt to

settle the issue informally. *Id*. Grievances must contain "specific information including

nature of the complaint, dates, places, and names," and only one issue may be raised in

each grievance. *Id.* Grievances are limited to one page of the grievance form, and an

inmate's description of the issue being grieved must be written within the appropriate

area of the grievance form. *Id*. The inmate must also include a remedy or means of

resolving the issue. *Id*. If the decision on an inmate's grievance is not satisfactory to the

inmate, the inmate may appeal that decision. *Id*. After the appeal is decided, the

Grievance Coordinator returns the completed appeal form to the inmate. *Id*. Only upon

completion of all three steps—Concern Form, Grievance Form, and Grievance Appeal—is the grievance process exhausted. *See* Dkt. 23-3.

    ii.    *Mr. Handleson's Medical Care*

The following facts related to Mr. Handleson's medical care while incarcerated at ISCI are undisputed. In June 2011, Mr. Handleson felt a "pop" in his lower back while he was getting up from his bunk and began to feel severe pain. Dkt. 3-1, at 2. Mr. Handleson states that Defendant Dr. Young refused to order an MRI and that he did not receive adequate medical treatment for his back at that time. The pain continued, and Mr. Handleson "suffered through" until he "couldn't stand the pain any more." *Id*. at 4.

When Mr. Handleson next sought medical treatment—in June 2014—he was placed in a wheelchair and told to "watch the call out" to be evaluated by a medical provider. Because Mr. Handleson was later placed in segregation, he missed that appointment. *Id.* Mr. Handleson continued to seek medical treatment throughout 2014 and 2015 and was given an MRI and different medications to try to manage his pain. *Id.* at 5.

On April 23, 2015, Mr. Handleson was evaluated by Defendant Gelok, a prison medical provider, who told him "that [Plaintiff had] already seen a specialist for [his] back problem and the [sic] [Gelok] will not do anything more for [Plaintiff]." *Id*. at 6. Plaintiff received "no pain meds, no treatment of any kind." *Id.* Mr. Handleson did not submit another request to see a medical provider after that appointment.

In December 2015, Mr. Handleson had severe abdominal pain. Medical staff responded to Mr. Handleson's distress, but Defendant Nurse McCall told him that his vitals were "better than hers and then proceeded to scold [Plaintiff] saying: "You took me away from intake for this? This is not an emergency!" *Id*. Ms. McCall told Mr. Handleson to go to sick call in the morning. *Id.*

In April 2016, Mr. Handleson was prescribed Neurontin for his back pain. Two days later, he had a seizure, allegedly as a result of the Neurontin. *Id*. at 7. Mr. Handleson states that his seizure lasted over 40 minutes but that "nobody would help." *Id*. Eventually a correctional officer called the medical response team. "By this time, [Plaintiff] was so week [sic] and dehydrated [he] couldn't keep [himself] in [his] wheelchair and fell out of [the] wheelchair," hitting his head on the concrete floor. *Id*.

Nurse McCall then "proceeded to burst two amonia [sic] capsules and inserted them into [Plaintiff's] nose and then covered [his] mouth." *Id*. Mr. Handleson panicked and took a deep breath through his nose with the capsules still inside, which allegedly "burn[ed] [his] entire airway from [his] nose to [his] lungs." *Id*. Mr. Handleson was given a saline IV for dehydration and water to drink. Mr. Handleson then contracted the flu and "was given non-effective medications." *Id*.

On April 29, 2016, Mr. Handleson had a follow-up appointment with Defendant N.P. Paulson regarding the Neurontin problem. Paulson told him, "[t]here's nothing more I'm going to do for you, no pain management, no treatment for any thing but cronic [sic]

care and your mental health situation." *Id*. Several months later, Mr. Handleson was seen by a provider with the chronic care program, Mr. Delwo, who ordered labs and stated that he would have a follow-up appointment regarding bloodwork later on. When Mr. Handleson informed Mr. Delwo that he had severe back pain and that he would be released from prison in about nine months, Mr. Delwo stated, "Hang in there, you're almost out. You can take care of it . . . when you get out." *Id*. at 8.

iii.    *Mr. Handleson's Use of the IDOC Grievance Process*

The Parties do not dispute the extent to which Mr. Handleson used the grievance process. On September 28, 2011, Mr. Handleson filled out a Grievance Form because he had not been given an MRI for his back pain. Dkt 28-3 at 1. The IDOC responded on October 13, 2011 that the Doctor had ordered Physical Therapy, not an MRI, which would start shortly. *Id*. At 23. There is no evidence in the record of Mr. Handleson proceeding to the final stage of a Grievance Appeal in 2011 for his MRI-related grievance.

On January 30, 2014, Mr. Handleson submitted another Grievance Form, which was not processed because he had not yet filed the more informal Concern Form to attempt to resolve the issue. Dkt. 28-3 at 3. Five days later, Mr. Handleson attempted to re-submit the Grievance Form, but again included issues from 2013 for which he had not completed step one of the grievance process. *Id.* at 5. On June 16, 2014, Mr. Handleson filed his Grievance Form correctly, alleging that Corizon Medical Service had failed to

provide a "neuro surgeon consult" as directed by Dr. Young. *Id.* At 7. The IDOC refused to act on Mr. Handleson's grievance, noting that Dr. Young had recommended physical therapy, not neurosurgery. *Id.* Mr. Handleson then filed a Grievance Appeal in July, 2014, the last stage of the grievance process. *Id.* at 6. The IDOC provided an Appellate Authority Response on July 17, 2014, denying the requested relief proposed in Mr. Handleson's grievance. *Id.*

## 4. Analysis

### i. *Defendants Are Entitled to Summary Judgment Because Plaintiff Did Not Exhaust Administrative Remedies*

Mr. Handleson brings claims against Dr. Young, P.A. Paulson, R.N. McCall, and N. P. Gelok for their respective roles in his medical care while incarcerated at ISCI. Defendants have presented undisputed facts that (1) Mr. Handleson had access to an available administrative remedy, and (2) he failed to exhaust that remedy with respect to the medical care provided by any of the named defendants. Dkt. 23-1, at 3-7. The record shows that, in fact, Mr. Handleson only exhausted the IDOC grievance process once, in July, 2014. *See* Dkt. 28-3 at 6-7. Mr. Handleson exhausted the grievance process to complain that "Corizon Medical Services is denying me what the provider, Dr. Young, requested for me," which Mr. Handleson believed was a "Neuro Surgeon consult." *Id.* The July 2014 grievance was not against the Defendant Dr. Young, but directed to Corizon's failure to order Mr. Handleson an MRI. With respect to the other three Defendants— Paulson, McCall, and Gelok—Mr. Handleson never mentioned them in a

Grievance form with the IDOC, and has not utilized the grievance process since these defendants began giving him medical care. *See generally* Dkt. 23-1. Because Mr. Handleson exhausted the grievance process only once, and not with respect to the alleged misconduct of any of the defendants, the burden is on him to show "that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

    *ii.*    *Availability of the IDOC Grievance Process*

In his Complaint and Response to Defendants Motion for Summary Judgment, Mr. Handleson makes conclusory allegations about the unavailability of the grievance process, none of which is supported by facts in the record. First, Mr. Handleson asks the Court to find that "access to administrative grievance, and Judicial grievance have been frustrated, hindered, and actually chilled beginning the day of arrival into prison." Dkt. 28-1 at 4. He also asks this Court to find that exhaustion is not "reasonably 'available' because it is 'hard, stressful, …, [sic] and generally futile process.'" Dkt. 28-1 at 6. Mr. Handleson, however, has failed to substantiate these claims. He has not presented any facts to show that the grievance process is "a simple dead end," "so opaque that it becomes, practically speaking, incapable of use," or that "administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1854. Indeed, the only evidence in the record shows Mr. Handleson knew how to use the grievance procedures and did so with respect to

Corizon's refusal to provide him with an MRI or neurosurgeon consult. *See* Dkt 28-3 at 6-7. Absent any facts showing the inefficacy, opacity, or retaliatory nature of the IDOC grievance process, the Court finds this process was available to Mr. Handleson, and that his failure to exhaust the grievance process merits dismissal of his claims.

## CONCLUSION

Defendants have submitted evidence establishing that, at of time of the events giving rise to Mr. Handleson's claims, the prison had grievance procedures in place and that Mr. Handleson did not exhaust those procedures. Defendants' evidence is uncontroverted, and Mr. Handleson has not raised a genuine dispute as to any material fact. Therefore, Defendants are entitled to judgment as a matter of law.

## OTHER PENDING MOTIONS

As a result of the dismissal of this case, Defendants' Motion to Stay Discovery Pending Ruling on Motion for Summary Judgment (Dkt. 23), Plaintiff's Motion to Reconsider Corizon Medical Service LLC as a Defendant (Dkt. 27), Plaintiff's Motion for Appointment of Counsel (Dkt. 32), Plaintiff's Motion for Limited Appointment of Counsel (Dkt. 35), and Defendants' Motion to Strike Response to Motion for Summary Judgment (Dkt. 31) are DENIED as moot.

## ORDER

In accordance with the Memorandum Decision set forth above, NOW THEREFORE IT IS HEREBY ORDERED, that:

1. Defendants' Motion for Summary Judgment (Dkt. 23) is GRANTED. The Court shall issue a separate judgment as required by Rule 58(a).

2. Defendants' Motion to Stay Discovery Pending Ruling on Motion for Summary Judgment (Dkt. 23), Plaintiff's Motion to Reconsider Corizon Medical Service LLC as a Defendant (Dkt. 27), Plaintiff's Motion for Appointment of Counsel (Dkt. 32), Plaintiff's Motion for Limited Appointment of Counsel (Dkt. 35), and Defendants' Motion to Strike Response to Motion for Summary Judgment (Dkt. 31) are DENIED as moot.

DATED: February 5, 2019

B. Lynn Winmill
U.S. District Court Judge